UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CYNTHIA A. HUMPHREY, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:09-cv-1261-SEB-TAB |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Cynthia A. Humphrey ("Humphrey") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. Background**

Humphrey applied for DIB on September 1, 2004, alleging an onset date of February 14, 2004. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on April 6, 2007. Humphrey was present, accompanied by her attorney. Medical and other records were introduced into evidence. Humphrey, her daughter, a medical expert, and a vocational expert testified. The ALJ denied Humphrey's application on August 15, 2007. On August 21, 2009, the Appeals Council denied Humphrey's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Humphrey met the insured status requirements of the Act through December 31, 2008; (2) Humphrey had not engaged in substantial gainful activity since February 14, 2004, the alleged onset date; (3) Humphrey had a severe impairment, status post lumbar laminectomy; (4) Humphrey did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Humphrey had the residual functional capacity ("RFC") to perform light work[1] except she could perform no more than occasional bending, squatting, kneeling, stooping or crawling, and she was otherwise unlimited in her ability to perform mental, manipulative, postural, communicative and environmental functions; (6) Humphrey was unable to perform any past relevant work; (7) Humphrey was born on January 20, 1958, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) Humphrey had a limited education and was able to communicate in English; (9) transferability of job skills was not an issue in this case because Humphrey's past relevant work was unskilled; and (10) considering Humphrey's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Humphrey had not been under a "disability" as defined in the Act, from February 14, 2004, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§

---

[1]Light work is defined as lifting and carrying no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls. 20 C.F.R. § 404.1567(b). (R. at 71).

2

404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Humphrey had a severe impairment consisting of status post lumbar laminectomy, there were a significant number of jobs in the national economy that she could perform. The ALJ determined that Humphrey could perform light work, except she could perform no more than occasional bending, squatting, kneeling, stooping or crawling, and she was otherwise unlimited in her ability to perform mental, manipulative, postural, communicative and environmental functions. (R. at 71). Humphrey argues that the ALJ's decision is not supported by substantial evidence. More specifically, Humphrey asserts that the ALJ erred by finding that none of her impairments satisfied or equaled a listing. In addition, Humphrey argues that the ALJ's credibility determination was erroneous.

*Listing 1.04A*

Humphrey first argues that substantial evidence does not support the ALJ's finding that Humphrey's back impairment did not satisfy the requirements of Listing 1.04A. Humphrey argues that the ALJ minimized the evidence that would support a finding of disability at the listing level.

At step three of the analysis, the ALJ stated that "no medical source who has examined the claimant or reviewed his [sic] records," has opined that Humphrey's impairments, individually or in combination, met or medically equaled a listed impairment. (R. at 71). The ALJ reasoned that Humphrey did not meet or equal Listing 1.04 because she was "able to ambulate effectively, objective medical testing has not confirmed radiculopathy, and the claimant has not consistently been observed to have positive straight leg raises on the right sign [sic]." *Id.*

Humphrey correctly points out that the ability to ambulate effectively is not a requirement of Listing 1.04A (disorders of the spine resulting in compromise of a nerve root

3

or the spinal cord).[2] She also asserts that there is some evidence of radiculopathy, nerve root compromise and a positive straight-leg test. (Plaintiff's Brief at 22-25, citing R. at 175, 176, 178, 185, 186, 189, 206-07, 219). The Commissioner responds that not all elements of Listing 1.04A were present, including motor loss (atrophy). After reviewing the record, medical expert Dr. Lorber opined that Humphrey did not meet or equal Listing 1.04A. (R. at 421). It is also true, as noted by the ALJ, that no physician of record opined that Humphrey's spinal impairment satisfied the requirements of Listing 1.04A. (R. at 71). Under these circumstances, the ALJ's finding that Humphrey's back impairment did not satisfy Listing 1.04A is supported by substantial evidence.

*Mental Impairments*

The court finds the ALJ's conclusions associated with Humphrey's mental impairments more troubling. The ALJ determined that Humphrey's depression and anxiety were not severe impairments.[3] (R. at 70). The ALJ explained that "[t]here is no objective medical evidence of record to support that the claimant experiences more than mild restrictions in her activities of daily living, mild difficulties with social functioning, mild difficulty with maintaining concentration, persistence or pace, and she has not experienced an episode of decompensation." *Id.* Humphrey argues that the ALJ misstated parts of the record and thereby minimized the severity of her mental impairments. The court agrees.

The ALJ noted that Humphrey sought and obtained therapy at various times from 2005 through the date of the hearing in April 2007. (R. at 70). Several antidepressant medications were prescribed during this time. Therapist notes reflected anxiety, panic, increased heart rate, worry, racing thoughts, crying, social withdrawal, decreased concentration, memory loss, hopelessness, and decrease in activities of daily living, including housework. *Id.* The therapist further noted suspiciousness, delusions, hallucinations and anger outbursts. *Id.* In the face of this evidence, the ALJ believed it "unclear whether the symptoms were observed by the social worker, or whether the social worker merely reiterated the claimant's allegations." The ALJ made no attempt to contact the social worker to clarify what he thought was "unclear." Rather, the ALJ concluded that "[r]egardless, I do not find the evidence to support a change in my finding that the claimant's depression is not a severe impairment." *Id.* The ALJ then inexplicably concluded that "[t]he claimant did not seek treatment, which suggests that the limiting effects of her symptoms were not as severe as she alleged." *Id.*

---

[2] 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

[3] To be considered "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

4

Even if Humphrey had "a somewhat inconsistent treatment history," (R. at 70), she is correct in asserting that the ALJ should have attempted to ascertain reasons for that before assuming that her symptoms were not severe. *See* SSR 96-7p ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). This is further confounding in light of the ALJ's acknowledgment that Humphrey's treatment history was "exasperated by the resignation of her social worker/therapist in August 2006." (R. at 70). The ALJ also referenced evidence that Humphrey had been unable to follow through with prescribed group therapy because of discomfort around others, and that Humphrey had problems with transportation. (R. at 76). In other words, there was evidence explaining why Humphrey may have had some disruptions in treatment, and yet the ALJ discounted the severity of her impairments based on inconsistent treatment. The ALJ's conclusions are not reasonable based on the evidence. There is no evidence of malingering, nor did any psychological source question the diagnoses of major depression and anxiety.

Humphrey bears the burden of establishing that her mental impairments were severe. She has pointed to records from mental health providers spanning the time period of 2004 through 2007. Such records reflect a diagnosis of major depression and indicate Global Assessments of Functioning ("GAF") as low as 50 and 52, indicating serious symptoms. (R. at 310, 375). Psychiatrist Julia Hyland diagnosed Humphrey as having chronic major depression and post traumatic stress disorder. (R. at 345). Antidepressants and anti-anxiety medications were prescribed.

Humphrey also points out that her mental health providers opined on February 21, 2007, that she had "marked" limitations in the areas of "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms," "the ability to interact appropriately with the general public," "the ability to ask simple questions or request assistance," "the ability to accept instructions and respond appropriately to criticism from supervisors," and "the ability to set realistic goals or make plans independently of others." (R. at 347). That same report indicated that Humphrey had a number of "moderate" limitations as well, in the areas of understanding and memory and sustained concentration and persistence, none of which were incorporated in the ALJ's RFC assessment. (R. at 346). The ALJ discussed these findings, but concluded that these findings were "not consistent with the medical evidence of record." (R. at 76). The ALJ characterized the record as having "no" objective medical evidence showing more than mild symptoms caused by mental impairments, (R. at 70), and then later in his decision asserted that although there was such evidence, it was "not consistent with the medical evidence of record." (R. at 76). These contradictory statements do not uphold the ALJ's analysis of the mental health evidence.

As further support of the ALJ's determination that the February 21, 2007, mental residual functional capacity report was inconsistent with "the medical evidence," the ALJ noted that in February of 2007, Humphrey had increased her walking and had lost weight. (R. at 76). The ALJ failed to link this remark to any inconsistency with findings made by her therapist or psychiatrist. Likewise, the ALJ noted that at the hearing, Humphrey reported

5

taking nine medications. *Id.* Several of those medications were prescribed for depression and anxiety. The fact that Humphrey took medications does not discredit the psychiatric evidence that she had moderate and marked restrictions. (R. at 346-47). Rather, it supports such findings.

The ALJ also interpreted a medical record from December 17, 2006, in which Humphrey sought treatment for an acute onset of abdominal pain and "no other complaints," as being a basis to discount her alleged depression. (R. at 76, citing R. at 295). And yet, that medical report notes that Humphrey's depression was "active" and that she was taking antidepressant medications. (R. at 295). No medical source opined that Humphrey's depression somehow disappeared in December 2006. Indeed, the ALJ did not rely on any expert source in rejecting opinions of Humphrey's mental health providers. In essence, the ALJ rejected all of the mental health treatment records. There was no expert opinion given by a psychological expert at the hearing, and the ALJ referenced no State Agency psychologist opinion in this case.[4] "[A]n ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). Here, the ALJ's lay opinion is insufficient to discredit the opinions of Humphrey's mental health providers. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Moreover, by finding one severe impairment, the ALJ was obligated to consider Humphrey's other severe and non-severe impairments at step four in determining whether she could perform work activities. *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (at step four, the ALJ must consider "the aggregate effect of the entire constellation of ailments") (internal quotation omitted). In this case, the ALJ did not discuss or incorporate in his RFC assessment any limitations based on Humphrey's mental impairments. (R. at 77) ("The claimant's mental impairments are not severe and therefore do not cause more than a minimal limitation in her ability to perform basic work activities."). The ALJ's finding that Humphrey's mental impairments would cause no difficulty performing work activities is not supported by substantial evidence. Moreover, the ALJ erred in failing to consider the cumulative effect of severe pain, depression, and anxiety. *See Martinez v. Astrue*, 2011 WL 148810, No. 10-1957, at *4 (7th Cir. Jan. 19, 2011) (ALJ erred in not considering the interaction of physical pain and depression).

Because the ALJ concluded that Humphrey's mental impairment was not severe, he also determined without further analysis that her mental impairments did not satisfy the requirements of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders). The Commissioner attempts to fill that gap by asserting that State Agency physicians opined in January 2005 that Humphrey's back disorder and affective disorders were not disabling. (R. at 90). This contention is not helpful because 1) the ALJ did not base his own

---

[4] As part of her argument that the ALJ erred in evaluating her mental health impairment, Humphrey contends that the ALJ should have summoned a psychological expert to render an opinion as to whether Humphrey's combined mental impairments equaled a listing. Although he is not required to do so, on remand, the ALJ shall consider whether it would be helpful to have a psychological expert review the evidence and provide testimony at the hearing.

conclusions on this evidence, *see Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (the *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"), and 2) the largest portion of the mental health evidence post-dated January 2005. For the same reasons discussed above, the ALJ shall reconsider his finding at step three that Humphrey's mental impairments did not satisfy or equal a listing.

As far as Humphrey's mental impairments are concerned, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted). Accordingly, the ALJ's findings that Humphrey's mental impairments were not severe and did not meet or equal a listing are not supported by substantial evidence. The action must be remanded for further consideration of these issues.

*Credibility*

Humphrey also argues that the ALJ erred in assessing her credibility. The ALJ's summation of his credibility determination was as follows:

> After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the claimant's back pain, but that the claimant's statements concerning the intensity, persistence and limiting effects of this symptom is not entirely credible. Further, I note that disability requires more than the mere inability to work without pain.

(R. at 72-73) (internal citation omitted).

Humphrey argues that in making his credibility determination, the ALJ failed to consider the appropriate factors and substituted his own lay opinion based on improperly selected portions of the record. The ALJ recited the relevant regulations and Social Security Rulings when he discussed his obligation to make a credibility finding. (R. at 72, citing 20 C.F.R. § 404.1529(c) and SSR 96-7p). The ALJ also recited the factors that are to be considered. *Id.* Reciting the proper factors, however, is just the beginning of an adequate credibility determination.

The ALJ acknowledged that Humphrey alleged that she was unable to sustain even sedentary work activities on a regular and continuing basis due the limiting effects of her back pain, depression and anxiety. (R. at 72). The ALJ noted that Humphrey testified that she rarely shopped, only attended church occasionally, and relied on her daughters to perform all household activities. *Id.*

The ALJ based his finding that Humphrey was "not entirely credible" on his determination that Humphrey's testimony was not consistent with the medical evidence of record and her own prior statements. (R. at 74). The inconsistent statements cited are that Humphrey testified that she last had an alcoholic drink in 2003, but in February 2004

7

Humphrey told a physician that she drank a bottle of liquor per week after her son was killed and in October 2004 she reported to a consulting physician that she rarely drank. (R. at 73). The ALJ placed great weight on what he described as inconsistent statements about her alcohol consumption, and yet, in fact, Humphrey testified at her hearing that she last drank in 2004, not 2003. (R. at 425). Therefore, the ALJ's finding that Humphrey was "not entirely credible" on this basis is not supported by the record.

Humphrey and her daughter described Humphrey's symptoms of depression, anxiety attacks, difficulty being alone, problems with memory and forgetfulness, feelings of anger because of her difficulties, and her inability to take care of her finances, shopping, and household chores. The ALJ concluded that Humphrey's testimony that she got along well with family, took a vacation with them to Kings Island in Ohio and sometimes lived with her daughter's family for extended periods, reduced her credibility in light of her reports of depression and anxiety so severe that she could not leave her bed, "let alone the State of Indiana." (R. 74).

The Commissioner asserts that the ALJ properly relied on findings that Humphrey's allegations were at odds with her ability to take a Kings Island vacation and that she had made several inconsistent statements. The Commissioner contends that these are valid factors in determining a claimant's credibility and therefore the ALJ's assessment should be affirmed. The court finds that this position is not substantially justified, given the ALJ's flawed evaluation of Humphrey's statements about alcohol consumption, and the record as a whole. To discredit Humphrey's allegations of depression, anxiety and pain based on the fact that since February 2004 she took a single trip, a three hour drive with her daughter's family, to King's Island, (R. at 396), absent any other testimony as to how she felt during the trip, whether she experienced pain, to what extent she participated in any activities, etc., is patently wrong. Moreover, the fact that Humphrey stayed with a daughter's family for extended periods of time because she needed help and felt nervous being alone is consistent with her allegations, not inconsistent. A reasonable person could not believe that the ALJ's basis for his credibility assessment was correct. *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("The ALJ's reasons for his adverse credibility ruling find no support, on close examination, and for that reason, the credibility determination cannot stand.").

The ALJ "must justify the credibility finding with specific reasons supported by the record." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (remanding ALJ's decision where credibility assessment was not supported by the record). Although the court grants special deference to the credibility determination made by the ALJ and generally will not overturn it unless it is "patently wrong," in this case the ALJ did not "build an accurate and logical bridge" from the evidence to his conclusions. *See Parker*, 597 F.3d at 922 ("The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony."); *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (ALJ's decision remanded because ALJ's reasons for his adverse credibility finding were flawed); *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001). Under these circumstances, the court cannot affirm the ALJ's credibility analysis. On remand, the Commissioner must reassess Humphrey's credibility in light of all of the evidence of record and the matters discussed above.

## III. Conclusion

For the reasons discussed above, the ALJ's conclusion that Humphrey could perform a range of light work is not supported by substantial evidence. The court, therefore, is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

On remand, the plaintiff shall be given the opportunity to present additional evidence associated with her spine disorder as well as her mental impairments. At steps two and three of the analysis, the ALJ shall reconsider the entire record and shall consider the value of consulting with a psychological expert to assist in determining the severity and functional limitations of Humphrey's mental impairments. At step four, the ALJ shall incorporate all severe and non-severe impairments when determining the RFC. The ALJ shall also re-evaluate Humphrey's credibility.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 01/21/2011

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana